# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 16, 2018

Lyle W. Cayce
Clerk

No. 17-30371

STEPHEN R. LEGENDRE; PAUL L. LEGENDRE, also known as Leroy Paul Legendre; RAGUS J. LEGENDRE; PERCY J. LEGENDRE, JR.,

      Plaintiffs - Appellees

v.

HUNTINGTON INGALLS, INCORPORATED, formerly known as Northrop Grumman Shipbuilding, Incorporated, formerly known as Northrop Grumman Ship Systems, Incorporated, formerly known as Avondale Industries, Incorporated, formerly known as Avondale Shipyards, Incorporated, formerly known as Avondale Marine Ways, Incorporated,

      Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM, PRADO, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

The Legendre brothers, Stephen, Paul, Ragus, and Percy, Jr., sued appellant Huntington Ingalls, Inc. (Avondale)[1] and other defendants in Louisiana state court. In their complaint, the Legendres alleged that the defendants exposed their sister, Mary Jane Wilde, to asbestos and caused her

---

[1]     Appellant Huntington Ingalls was formerly known as Avondale. The parties refer to Huntington Ingalls as Avondale, and we follow their lead.

No. 17-30371

to die of mesothelioma. Avondale invoked the federal officer removal statute, 28 U.S.C. § 1442, and removed to the Eastern District of Louisiana. The district court remanded, holding that Avondale failed to show the required "causal nexus" to support federal jurisdiction. We affirm.[2]

I.

In 2016, Mary Jane Wilde died of complications related to mesothelioma. Wilde's father, Percy Legendre, worked at Avondale's shipyard in the 1940s. His responsibilities included working with asbestos insulation in the engine rooms of tugs built for the United States government. The Legendre brothers allege that asbestos fibers clung to their father's clothing and body when he returned home from work each day, and that Wilde was exposed to these fibers at home, causing her disease and eventual death.

In their complaint, the Legendres allege that Avondale failed to warn its employees of the risks of asbestos exposure and failed to implement proper safety procedures for handling asbestos. The district court held, and Avondale does not dispute, that the Legendres' claims sound in negligence, not strict liability.

Avondale removed to the Eastern District of Louisiana, asserting federal jurisdiction under 28 U.S.C. § 1442, the federal officer removal statute. The Legendre brothers moved to remand. The district court granted the motion, and Avondale now appeals.

II.

"[F]ederal officer removal under 28 U.S.C. § 1442 is unlike other removal doctrines: it is not narrow or limited." *State v. Kleinert*, 855 F.3d 305, 311 (5th Cir. 2017) (quotation marks omitted). We review the district court's remand

---

[2]     Avondale recently moved to stay the district court's remand order. That motion is denied.

2

order de novo, "without a thumb on the remand side of the scale." *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 462 (5th Cir. 2016); *see also* 28 U.S.C. § 1447(d) ("[A]n order remanding a case to the State court from which it was removed pursuant to section 1442 . . . of this title shall be reviewable by appeal or otherwise."). Nonetheless, it remains "the defendant's burden to establish the existence of federal jurisdiction over the controversy." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998).

Under § 1442, an action "against or directed to . . . any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office" may be removed to federal court. 28 U.S.C. § 1442(a)(1). To remove, a defendant must show: "(1) that it is a person within the meaning of the statute, (2) that it has 'a colorable federal defense,' (3) that it 'acted pursuant to a federal officer's directions,' and (4) 'that a causal nexus exists between [its] actions under color of federal office and the plaintiff's claims.'" *Zeringue v. Crane Co.*, 846 F.3d 785, 789 (5th Cir. 2017) (alteration in original) (quoting *Bartel v. Alcoa S.S. Co.*, 805 F.3d 169, 172 (5th Cir. 2015)). The district court determined that Avondale could not meet the "causal nexus" prong, and therefore did not reach the rest of the test.[3]

In the past, § 1442 permitted removal "only when the state suit was 'for any act under color of such office.'" *Id.* at 793 (quoting Act of June 25, 1948, ch. 646, 62 Stat. 938 (codified at 28 U.S.C. § 1442)). But Congress amended the

---

[3] The district court did address the "colorable federal defense" prong in a later order denying Avondale's motion to stay the remand order. *Legendre v. Huntington Ingalls Inc.*, 17-2162, 2017 WL 2881324, at *3-5 (E.D. La. July 6, 2017). The court concluded that Avondale could not meet this prong because it failed to allege that the government exercised discretion over any warnings or safety programs at Avondale's shipyard. *Id.* In the same order, the court declined Avondale's renewed invitation to disregard our causal nexus decisions. *See id.* at *2 n.5 (citing J.R.R. Tolkien, *The Fellowship of the Ring* bk. 1, ch. 3 (1954) ("Do not meddle in the affairs of Wizards, for they are subtle and quick to anger.")).

No. 17-30371

statute in 2011 "to allow the removal of a state suit 'for *or relating to* any act under color of such office.'" *Id.* (quoting Removal Clarification Act of 2011, Pub. L. No. 112–51, § 2(b)(2), 125 Stat. 545 (codified at 28 U.S.C. § 1442)). As recognized by the district court, we have interpreted the causal nexus requirement under the modern statute three times.

First was *Bartel v. Alcoa Steamship Co., Inc.*, 805 F.3d 169 (5th Cir. 2015). In that case, merchant mariners sued their former employers in state court. *Id.* at 171. The mariners alleged that they had been injured by asbestos exposure on vessels owned by the United States Navy, but operated by the civilian employers. *Id.* at 171-72. The mariners attributed their injuries "to the employers' failure to warn of the dangers of asbestos, to train their crews in using asbestos-containing products, and to adopt procedures for the safe installation and removal of asbestos." *Id.* at 171. We found no nexus between these negligence claims and the defendants' actions under color of federal office because the evidence suggested that the government did not issue any "orders relating to safety procedures or asbestos" and that defendants were therefore "free to adopt the safety measures the plaintiffs now allege would have prevented their injuries." *Id.* at 174.

We revisited the causal nexus requirement in *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457 (5th Cir. 2016). That case, like this one, involved alleged asbestos exposure during construction of federal vessels at Avondale's shipyard. *Id.* at 459. The Savoies brought both negligence and strict liability claims in state court, and Avondale removed citing federal officer jurisdiction. *Id.* at 460. The district court remanded, finding causal nexus lacking. *Id.* at 460, 462.

The allegations of federal control in *Savoie* mirror those in this case, and the parties cited much of the same evidence. As to the plaintiffs' negligence claims, this court in *Savoie* "agree[d] with the district court that the federal

4

government's mandate of asbestos insulation did not cause the shipyard to engage in the challenged conduct." *Id.* at 462. We described the *Savoie* plaintiffs' negligence allegations as "nearly identical" and "essentially the same as the ones made in *Bartel*[.]" *Id.* at 462-63. We explained that "the Navy neither imposed any special safety requirements on the shipyard nor prevented the shipyard from imposing its own safety procedures." *Id.* at 463. Accordingly, the Savoies' negligence claims "challenge[d] discretionary acts of the shipyard free of federal interference," and "the government's directions to the shipyard via the contract specifications did not cause the alleged negligence[.]" *Id.* These claims therefore could not support removal. *Id.* The Savoies' strict liability claims, by contrast, "rest[ed] on the mere use of asbestos." *Id.* at 465. These claims were causally linked to the Navy's requirement that its ships contain asbestos, and therefore supported removal. *Id.* at 465-66.[4]

*Zeringue v. Crane Co.,* 846 F.3d 785 (5th Cir. 2017), is the final installment in our post-2011 federal officer trilogy. Zeringue sued in state court, asserting that he had been exposed to asbestos while deployed with the U.S. Navy. *Id.* at 788. Among several other defendants, Zeringue sued Crane, which manufactured valves packed in asbestos for the Navy. *Id.* at 788, 791. Zeringue asserted strict liability, negligence, and failure to warn claims. *Id.* at 788. Crane removed under § 1442, asserting that both the valve's design and

---

[4] The *Savoie* defendants did not argue that the 2011 amendment to § 1442 altered our pre-existing causal nexus test. *See Savoie v. Huntington Ingalls, Inc.*, 824 F.3d 468, 469 (5th Cir. 2016). In a petition for rehearing, however, the defendants made "a colorable argument that, in regard to the negligence claims, [the] action [wa]s removable because of the 2011 statutory amendment." *Id.* In our order denying rehearing, we clarified that defendants had forfeited this argument, but cautioned that "[n]othing in our opinion should be read as an exposition of the effect of the 2011 amendment on the viability of *Winters* or on the scope of the post-amendment decision in *Bartel* . . . ." *Id.* at 469-70.

the decision to warn lay within the discretion of Crane's federal superior. *Id.* The district court remanded, and we reversed. *Id.* at 788-89, 795.

In *Zeringue*, we recognized that the 2011 amendment shifted the causal nexus calculus: "The plain meaning of the added language broadens the scope of the statute as 'the ordinary meaning of [relating to] is a broad one—"to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with."'" *Id.* at 793 (alteration in original) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)); *see also id.* ("The 2011 amendment expanded the breadth of acts sufficient to establish a causal nexus even further."). But this broadening, we held, did not eliminate the requirement that the removing party "establish 'a nexus, a "causal connection" between the charged conduct and asserted official authority.'" *Id.* (quoting *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999)). Crane met this requirement—at least as to the claims based on mere use of asbestos[5]—because its "relationship with Zeringue derive[d] solely from its official authority to provide parts to the Navy, and that official authority relate[d] to Crane's allegedly improper actions, namely its use of asbestos in those parts." *Id.* at 793-94 (emphasis omitted). Importantly, in *Zeringue* we explicitly reaffirmed *Bartel*. *Id.* at 794. We described the "charged conduct" in *Bartel* as failing to warn, train, and adopt safety procedures regarding asbestos. *Id.* These actions, we explained, were "private conduct that implicated no federal interest" and therefore "an extension of § 1442 to allow [the *Bartel*] defendants to remove would have stretched the causal nexus requirement to the point of irrelevance." *Id.*

---

[5]     "Because 'removal of the entire case is appropriate so long as a single claim satisfies the federal officer removal statute,' we do not determine whether Crane independently established the right to remove Zeringue's failure to warn claim." *Zeringue*, 846 F.3d at 794 (quoting *Savoie*, 817 F.3d at 463).

No. 17-30371

## III.

The district court correctly held that this sequence of our precedent requires remand of the Legendres' claims. As noted, *Bartel* instructs that § 1442 does *not* support removal where defendant government contractors "were free to adopt the safety measures the plaintiffs now allege would have prevented their injuries." 805 F.3d at 174. The Legendres provide unrebutted evidence that although the government required Avondale to use asbestos in the construction of the tugs, the government did nothing to restrict Avondale's safety practices. In *Bartel*, the government required the defendants to use ships containing asbestos, but did nothing to restrict the defendants' safety measures. Between the two, the causal nexus analysis is, as highlighted by us in *Savoie*, "nearly identical." 817 F.3d at 462.

The Legendres point to unchallenged evidence that Avondale was free to adopt the safety measures the Legendres allege would have prevented their sister's death. The Legendres' expert, a former Navy ship inspector at Avondale, states that "government inspectors neither monitored nor enforced safety regulations" at Avondale. Rather, "[o]n the job safety during the construction of vessels for the United States government was the responsibility of Avondale Shipyards' safety department." Another Navy inspector states in deposition that the Navy was a customer "[j]ust like anybody else" and the purpose of Navy inspections was to ensure that a particular job "was completed and Avondale had done all the work." Avondale does not attempt to rebut this evidence, or to show that the government did in fact limit Avondale's authority to implement safety measures.

Avondale's attempt to distinguish *Bartel* on its facts is unpersuasive. It stresses that the government specifically required Avondale to use asbestos insulation and oversaw construction to ensure that Avondale built the tugs to the government's specifications. But nothing about this arrangement suggests

7

that Avondale was not "free to adopt the safety measures the plaintiffs now allege would have prevented their injuries." *Bartel*, 805 F.3d at 174. Absent such a conflict between federal direction and the Legendres' state-law claims, *Bartel* requires remand.

Perhaps recognizing this factual similarity, Avondale directs most of its energy towards arguing that that *Bartel* is inapposite because it applied pre-2011 precedent and thereby failed to give effect to Congress' new language. This significant argument, presented to us instead of our full court, however, is precluded by our rule of orderliness. "This Court adheres to a 'rule of orderliness,' under which a panel may not overturn a controlling precedent 'absent an intervening change in law, such as by a statutory amendment, or the Supreme Court, or our en banc court.'" *Vaughan v. Anderson Reg'l Med. Ctr.*, 849 F.3d 588, 591 (5th Cir. 2017) (quoting *Sprong v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 787 F.3d 296, 305 (5th Cir. 2015)). The 2011 amendment was, of course, not "intervening"; *Bartel* was decided after the change and quoted the new "relating to" language. *Bartel*'s articulation of the causal nexus standard, and its requirement that the claimed negligence conflict with a federal directive, was integral to the result. We are therefore bound by the *Bartel* standard. *Cf. E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 695 (5th Cir. 2014) (rule of orderliness required court to apply earliest Fifth Circuit articulation of "causal nexus" element necessary to establish a prima facie case of discriminatory termination under the ADA).[6]

As the district court responsibly observed, and as we too are bound, because *Bartel* is a published decision of this court, and there has been no

---

[6]    As in *Savoie,* the *Bartel* panel worked without the benefit of argument on the effect of the 2011 amendment. But that does not reduce the opinion's binding effect. *See Sykes v. Tex. Air Corp.*, 834 F.2d 488, 492 (5th Cir. 1987) ("The fact that in [a prior decision] no litigant made and no judge considered the fancy argument advanced in this case does not authorize us to disregard our Court's strong rule that we cannot overrule the prior decision.").

intervening change in law, its causal nexus test controls. Avondale makes no showing that it was not "free to adopt the safety measures the plaintiffs now allege would have prevented their injuries." *Bartel*, 805 F.3d at 174. Accordingly, Avondale cannot meet the causal nexus prong of the federal officer removal standard and remand was proper.

This conclusion is consistent with both *Savoie* and *Zeringue*. In *Savoie* we relied on *Bartel* to hold that negligence claims nearly identical to those at issue here could not support removal. 817 F.3d at 463. In *Zeringue* we found federal jurisdiction where plaintiffs asserted liability based on the presence of asbestos in parts the Navy "directed" Crane to provide, while at the same time we explicitly reaffirmed *Bartel*. 846 F.3d at 794. These cases therefore do not support federal jurisdiction over this case.

IV.

Although we are bound by our precedents, we note that other circuits have read the 2011 amendments to eliminate the old "causal nexus" requirement. The Third Circuit has explained that before 2011, proponents of jurisdiction were required to "show a nexus, a causal connection." *In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 470 (3d Cir. 2015) (internal quotations omitted). The court contrasted this old, causal requirement with the new statutory language, which—the Third Circuit held—requires only "a 'connection' or 'association' between the act in question and the federal office." *Id.* at 471; *accord Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017) (applying "connection or association" test). *But see Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1144-45 (11th Cir. 2017) (citing the Third Circuit's "connection or association" language, but applying a "causal connection" test).

A revised approach may have merit. The causal nexus requirement we have continued to apply derives from the pre-2011 "for any act under color of

No. 17-30371

such office" language. *See Willingham v. Morgan*, 395 U.S. 402, 409 (1969) ("Past cases have interpreted the 'color of office' test to require a showing of a 'causal connection' between the charged conduct and asserted official authority."); *Acker*, 527 U.S. at 431 ("To qualify for removal, an officer of the federal courts must . . . establish that the suit is *for* an act under color of office. To satisfy [this] requirement, the officer must show a nexus, a causal connection between the charged conduct and asserted official authority." (internal citations, quotation marks, and alterations omitted)). By adding "relating to," Congress preserved a *nexus* requirement, but it is unclear the relationship must be *causal*. Rather, as we have recognized, "relating to" has a broad meaning—"to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Zeringue*, 846 F.3d at 793 (internal quotation marks omitted). Nonetheless, under our law as presently controlling on us, Avondale must show a causal connection between the federal officer's direction and the conduct challenged by the Legendres. We affirm as correct the district court's conclusion that Avondale has not made this showing.

V.

The order of the district court is AFFIRMED.

10

No. 17-30371

HIGGINBOTHAM, Circuit Judge, concurring:

I concur fully with the majority opinion but write to suggest a source of the tension among our opinions; that is, our lack of focus on the colorable federal defense element, the predicate for removal under 28 U.S.C. § 1442. Here, that defense is the federal contractor defense articulated in *Boyle v. United Technologies Corp.*[1] I suggest that case contains all the necessary inquiries.

With these asbestos cases, we encounter three sets of jurisprudence. The first concerns the state-law claim for injuries suffered by exposure to asbestos. The second involves the federal contractor defense asserted by the government's contractor. The third entails the defendant's exercise of its forum choice through removal to federal court. Rather than plodding through these areas, district courts, in deciding a motion to remand, are often drawn by the parties into issues concerning the sufficiency of a plaintiff's state-law claim.

To these eyes, the better approach is to begin with the jurisdictional issue; that is, we, in resolving a motion to remand, should first ask if the defendant offers a colorable federal defense, as not doing so tends to invite a

---

[1] 487 U.S. 500, 512 (1988) ("Liability . . . cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in use of the equipment that were known to the supplier but not to the United States."); *see also Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 352 (5th Cir. 2010) ("The government contractor defense preempts state law and provides a total bar to liability in a failure-to-warn case if a defendant establishes three elements: (1) the federal government exercised discretion and approved warnings for the product; (2) the warnings the defendant provided about the product conformed to the federal government specification; and (3) the defendant warned the federal government about dangers known to the defendant but not the government.") (citing *Boyle*, 487 U.S. at 512).

premature merits determination.[2] For an asbestos case like the one presently before us, resolution is found by close application of the principles set forth in *Boyle*. There, the Court indicated that the overarching inquiry is whether the claimed injury results from a discretionary decision of the government—i.e., whether Lieutenant Boyle's death resulted from the government's decision that led to the defectively designed escape hatch.[3]

Drifting from this inquiry leads to the misapplication of the causal nexus requirement. It is telling that other circuits have read the 2011 amendment to eliminate causal nexus, accenting the point that the causal nexus analysis begins to take the same shape as the colorable federal defense inquiry. It is not so much that we need to abandon causal nexus; rather, the relevant point is that causal nexus has little work to do once a court sequences its analysis to determine the availability of a colorable federal defense—here, the federal contractor defense—at the outset.

It bears emphasis that while the metrics for removal have softened, there has been no retreat from the sharp demands of *Boyle*. The suggested sequencing with firm application of *Boyle* ought to bring much clarity to cases that appear sound in outcome but less than clear in rationale.

---

[2] *See, e.g.*, *Zeringue v. Crane Co.*, 846 F.3d 785, 790 (5th Cir. 2017) (resolving federal colorable defense before answering the causal nexus requirement).

[3] *Boyle*, 487 U.S. at 511.